I plan to reserve four minutes for rebuttal. I'll try to watch my clock. And I'm intending to focus on two areas today. First, the public authority instruction, and second, the four-level guideline enhancement. But of course, I'm happy to answer questions about anything. So starting with public authority, due process doesn't permit a court to force a defendant to disprove an element of his charges. Rather, it's the government's burden to prove all elements beyond a reasonable doubt. As this Court has recognized, this principle means that when a traditionally affirmative defense like public authority would negate an element of the crime, the district court cannot put the burden on the defendant to prove that element. So just to set the table here, I just want to make sure I understand what happened in the district court when this came down. It's my understanding, from looking at the proposed jury instructions, that both sides proposed the public authority instruction. Yes, Your Honor. And the district court judge gave it. And the district court judge gave it without... Okay, so we're here on plain air review. We are here on plain air review. Okay. Okay. And so what I was going to say is this Court's instructed to avoid having situations like this happen, it's instructed that before giving a public authority defense instruction, the district court must always look closely at the statutory language of the specific offense charge and determine whether the public authority defense negates an element. The district court here ignored that plain directive. It didn't look closely at Section 201 bribery and match it against the public authority defense. And so it failed to recognize that the instructions requirement that a defendant prove he believed he was assisting an authorized law enforcement activity negates the corruptly element of Section 201 bribery. So tell me why. I think I have an answer to it myself, but I want to hear your thought as to why the public authority instruction negates the corrupt intent element of bribery. Sure. So to act corruptly is to intend to be influenced by money to violate one's law enforcement duties in the case of a law enforcement officer. And a law enforcement officer can't both be intending to violate their official duties and reasonably believe that they're acting as an authorized law enforcement agent assisting in legitimate law enforcement activity. I just I don't see how you could be doing those two things at the same time. Let me ask you this. I was looking to see if I could find a case, a post Dixon case where an affirmative defense did negate an element of the crime or even public authority. And I maybe you can tell me if you've seen one because I don't think I could find one myself. I don't think I've I don't think I've seen one. I mean, that that doesn't mean that down at the district court, they haven't been giving public authority defense instructions. People have been requesting them where they don't shift the burden. Right. So so this was going to be my question in Doe. Doe was the case about an intent to commit a conspiracy to to drug to traffic and drugs. Right. And in Doe, the court said neither knowledge or intent would be negated by a public authority defense instruction. So there you had intent also not being negated. So what is it about corrupt intent that makes it different? Because it because it does bring it. I mean, corrupt intent, it's a heightened intent standard. It does bring in some of the things that Congress doesn't seem to have put into a drug, a drug offense where, you know, if you knowingly have the drugs and with the intent to distribute them, you're you're you're in trouble. Even if someone has, you know, a law enforcement officer told you to do this, you have to bring in the defense that that doesn't fit into the elements of the offense. You have to bring it in as a separate defense here. If if your superiors are telling you to do, you know, if if Mr. Cisneros, the superiors were telling him to do this, go ahead and do this. I mean, that fits. He's not doing anything corruptly if he's following orders. Right. Was he was the argument that he was following the orders of bail in? Not so much orders, but a but a reasonable request from another law enforcement officer. And they established below that it's reasonable for, you know, officers who work together, work in different agencies. They have access to different databases, a police officer, right, with the Glendale Police Department, a detective at the police police. He was and the defendant here was with the H.S.I. H.S.I. And so they but his argument is, is that he worked with him before when the police officer asked him to get this information. Police officer came to him and said, I have you know, I have this person who could be a confidential informant. We need would need to bring them in on a parole letter. Can you help me with that? And and other the government's witnesses agreed that that this is something that people do. This is a normal thing to do. But does that asking if can you help me with this? Is that the same as saying do this? It's not. No, it's not the same as do this. But it is. He's in doing it. He's acting. I mean, the idea would be he'd be acting as Bailey's agent. He's doing he's not. He's neither doing. He's not doing something corrupt. First of all, if he really believes he's doing this rebellion for a law enforcement purpose and at the same time, he's acting as Bailey's agent for a law enforcement. I guess this gets me to my question. Why? Even if you're correct, why is it plain error? Because if we don't have any case that has ever said anything about the public defense, public authority instruction negating the crime of bribery. And as Judge Pius just pointed out, there might be some nuances. And what does it mean to to be authorized or or be an agent? Even if there were some error, why is it plain error? So I think it's plain error because of that instruction in Doe telling courts that they always must look at the statute. Right. So they're saying you always have to look at the statute and weigh the elements. And I think that once you weigh the elements against it, once you put corruptly in the public authority defense next to each other, it seems pretty obvious. The government hasn't been able to come up with any any instance in which you could have one without negating the other. I haven't been able to. What you're saying is that once the parties stipulated to these instructions, the law was so clear that judge, I forget who the district judge was here, but the judge, the judge should have known that this stipulated instructions were improper. Yes. I mean, that's plainly obvious to any reasonable district judge. Yes, it's well, it's certainly plainly obvious because of the instruction in Doe that he had to go and do that analysis. And once he did that analysis, I might have a hard time with that. I mean, I was isn't that a little bit intention with your argument that there was not waiver? Because if I'm thinking about invited error and the way you get around invited error is if there was not an, you know, an intentional waiver of a known right. But if this is so obvious that it should have been known to the judge and presumably the lawyers, then aren't we in invited error land? No, I don't think so. I mean, there's some gap. I mean, plain error exists and it exists for obvious things and things that are not waived because there's invited error. We don't even look at the issue. Right. But there's something that, you know, there's instructions to the judge in Doe what he's supposed to do. And if he followed those instructions, then it would have been obvious. That's different from saying, which is what you need, what you need to show for waiver. Intentional relinquishment of a known right. Not just that, you know, a good lawyer would have known this, but that he knew this. And there has to be evidence in the record that he knew this. And there's nothing of that sort. As the government says, nobody below caught it. Okay, let's take this a step further. Let's just, let's take your argument that under Doe, district judge should have been aware that he needed to evaluate whether or not the instructions were proper, whether it negated or relieved the government of proving its case beyond a reasonable doubt, all elements. Okay, let's just assume the judge was aware of that. We have to go on under plain error to substantial rights. Right. So why was, you know, why does this all satisfy that? Okay, so there's, I mean, in terms of substantial rights, it's, on the one hand, this is a bad instruction, something shifting the burden on what the key element in this case. And it's the key element because there's not a lot of fighting about what Mr. Cisneros did, right? There's, we know there was a parole letter written, you know, we know that checks were passed. What we don't know is what was in his heart and his mind and why this happened. We, so this is, you know, this is the key element here. And so we have a bad instruction on the key element. And then on the other hand, the government's case is weaker than what it claims because it's based on... So let me just have you focus on the standards. So if we decide that this is, this was plain error on the part of the district court, we can then uphold the conviction only if there is strong and convincing evidence that the government did prove corrupt intent beyond a reasonable doubt. Yes. Okay. So can you address like whether the other evidence was strong and convincing? I don't believe so because it's all based on this guy Sargsyan, who is a large-scale fraudster who repeatedly told investigators that the checks to Cisneros were loans, that they weren't bribes, only changes his story way down the line in his own fraud case when he's looking for additional in the case. He lies to them about having no ongoing contact with this fraud co-conspirator and the government has to come in and admit that he lied. He lied about passing the bar exam, which came out after trial. So he's lying even as he's in front of the jury. And I think it's enough that a properly instructed jury dealing with someone that dubious, if they really understood the government's burden, there's a, there is a reasonable chance that they would have, they I know you said that this person, Balian, was a go-between in a lot of these issues, but there was evidence, I believe, of direct interactions between Mr. Cisneros and, and I'm forgetting his name now, Sargsyan, in one matter where he was asked or it was alleged that he was asked to be informed about a federal investigation of a co-conspirator. Why isn't that pretty compelling evidence that he was doing things outside of a supposed knowledge that he was doing it for, for government authorization? So that, I mean, that, that, that one wouldn't be covered by the defense and that was explained in closing by the defense attorney as just, I mean, these guys had a long-running personal relationship. They did a lot of stuff together. They had thousands of text messages. And so this was, he did a favor for a friend, not, not that he's doing, doing bribery, not that he understood, who... But, but why, but to get back to the plain error standard, why isn't that strong and compelling evidence that, that his actions overall were not at the behest of, of another government official, but in order to, for, for this corrupt intent because he was being bribed? Because it, I mean, it's, that's sort of like a, you know, those are a couple isolated incidents. Most of what the government focused on at trial were these aspects where there was the go-between, the Repagatha situation and this Can Can Yan parole letter. The count two is entirely about the parole letter. So, so those are, I mean, those, you know, it, it's, there are arguments to be made either way. Where he didn't disclose his relationship, you know, to, to the person that would be the recipient of that parole letter, right? And so... Where, where Sargisian didn't. Right. Yes. No, no, that Cisneros did not disclose to his supervisors that, that when he's submitting this parole request, he happens to have a, some sort of a connection with the person at the end of it. The, the, I think the allegation is that he doesn't know that that's necessarily for, because it's coming from Bailey and it's not coming from Sargisian. So your, your thought is Sargisian was a pretty difficult, incredible witness and so a lot of it starts to fall apart. Right. In light of that. And, and, I mean, I think when the government trots out somebody like that, it, you know, has an effect of making their whole case a little unlikable. So they're, they're putting on a liar to make their case. Someone they know is a liar. It's not, it's not the best look. And when you're dealing with a beyond a reasonable doubt standard, there's work for defense attorneys to do with that. So why, why is there no prejudice if we think of the sequence of the way that the instruction was given, where the government first had to prove all the elements beyond a reasonable doubt, and only then would the jury move on to this, this affirmative defense? You know, if, if, if the jury thought that the government had proven its case beyond a reasonable doubt of a corrupt intent, couldn't they have just rationally decided, I believe the government and I don't believe that there was a reasonable basis and we don't have prejudice as a result. I, I, I have two responses to that. I mean, first, this court's never suggested that the sequencing can negate negation. And in fact, it goes contrary to Doe because every public authority defense instruction is going to start with a, if a person engaged in conduct that violated a criminal statute, that's what the one in Doe. And yet Doe is still saying, you know, you've got to go and look and see what's going on. And that makes sense because when jurors hear two different standards for the same thing, who knows what they're going to do. And then the other point is, when you, when you look at what the jury was actually told, they're not told, this isn't like a, a, a, sorry, they're, they're not told to go one and then the other. They're not told, first you have to find guilt, then you have to find whether the defense applies. It wasn't like a special verdict form. They're, they're, they're given the whole soup and they could, there's nothing in the instructions that prevents them from looking at the defense first, looking at the offense first, having them do it at the same time. I mean, there's, it, I, I think there's, there's enough room in there for them to do what they want with these conflicting standards and that's the problem. I'm running low on time. I'd love to get to the, the guidelines enhancement for a minute if I can. So the 2C1.1B3 imposes a four level enhancement on someone convicted of offering, giving, soliciting, or receiving a bribe if the offense involved an elected public official or any public official in a high level decision making or sensitive position. Importantly, this is the only enhancement in the, in the bribery guideline that's based on the rank of the person being bribed. It's the same enhancement that a corrupt senator would get or a cabinet secretary would get and it doesn't properly apply to a line investigator like Cisneros. He's not an elected official and he doesn't hold a high level decision making or sensitive position. The government concedes here that the commentary doesn't apply and that Cisneros did not himself hold a high level decision making position. So instead it's arguing that he had a qualifying sensitive position or because of his supervisor's  In terms of sensitive, I think it fails for several reasons. First, the best reading of the text is that the modifier high level applies to both decision making positions and sensitive positions. That Brian Garner calls out the series qualifier canon, but this court applies it without the fancy name. For instance, in DAEA, property damage or loss means property damage or property loss. So the best reading is high level decision making or high level sensitive position. Second, there's a doctrine of no situra sociis, and I apologize if I've said that wrong, that tells us that the items on the list need to be read together. Here, elected official and high level decision makers suggest much higher level officials than a line investigator. And third, there's the overall structure of the guideline. Again, this is a substantial increase. Let me just ask you something about this particular issue. The district court didn't have the benefit of, what is it, Castillo? It did not. Should we just send this issue back to the district court? You certainly could. I mean, I might point out to the district court the no situra sociis, that kind of thing, to give it some guidance on how to go about it, but certainly I don't think this court needs to go through and complete the analysis itself. Okay. All right. Unless anyone has questions, I'm going to hold on to my two minutes and 42 seconds.  Thank you. Good morning, your honors. May it please the court. Juan Rodriguez on behalf of the United States. The defendant was a federal agent who sold the resources of the federal government to Edgar Sargassian for cash and tax. The evidence clearly established that he did so corruptly. And I want to start off by first addressing a comment the council made that the affirmative defense was a joint proposed instruction. It actually wasn't. It originally started as a defense proposed instruction. And I'll point the court to the district court record at 72, sort of as a defense proposed instruction. And then the parties conferred and defense counsel insisted in the instruction. So the government did accede to it and the court said, submit it as a joint proposed, which is why it ended up as a joint proposed. So that's the first nuance. But even if it was a joint proposed instruction, there was no burden shifting here. And that's because it's very clear that the instructions outlined what the government had to prove that the government's charge was, that the government had to prove that the defendant acted corruptly. And even its own affirmative defense instruction reminds the jury of the government's charge. It actually juxtaposes the preponderance standard and it reminds the jury that the government still has to prove counts one and two, each element beyond a reasonable doubt. Does this defense negate an element of the corrupt intent crime? It doesn't, Your Honor. The instructions make it clear that it's conditional. It says if the defendant committed the crimes charged in counts one and two. So based on the fact that it's conditional. But those not turning on whether it's conditional or not, it's a more, I mean, it's a pure legal analysis of, for certain types of defenses, they're just, it just excuses the action for others. You're negating an element in which case the government has to bear the burden of proving the affirmative defense or negating it rather by beyond a reasonable doubt. So why, why, why don't we have a problem here if that wasn't part of the instruction? Because there was no negation. If you, if you look at the government's charge, the government's instruction that corruptly was correctly defined and the jury was told in all the instructions that they're supposed to read them all. They're all equally important and that in order to find the defendant guilty, the government had to prove each and every element, which includes corruptly beyond a reasonable doubt. So the fact that there's an affirmative defense instruction that is, that goes to the, to the element of corruptly doesn't negate the fact that the jury still had to find that the defendant, excuse me, that the government proved that the defendant acted corruptly. So there is no negation. Do you agree that these are mutually inconsistent? There's no way that one can corruptly intend to take a bribe or conspire to, and also have a reasonable belief that you're doing it in an authorized way? They are mutually exclusive. So is it, do you see this as just a superfluous instruction at best then? Exactly, Your Honor. It's a superfluous instruction and, and even if the court were to believe there were error, as I believe Your Honor was noting, there is no on point case. There is no plain error here, even if there was error, which again, the government doesn't believe there is error because the jury was correctly instructed. Nobody has argued otherwise. And moreover. Well, counsel pointed to Doe. Doe is a, Doe is a drug case and, and it's not. Well, it dealt with the public, public authority defense. Correct, Your Honor. In a different context. So it's, it's not on all fours. It's not controlling as to the, as to the current issue. Well, it set down some guidelines that, that courts should follow, didn't it? I think it's generally informative, but I wouldn't go as far as saying. Just put it aside and say, ah, we shouldn't bother with this. Under plain error, Your Honor, I believe that's, that is the correct analysis, but, but I understand that the court. Suppose we disagree. Point, tell me what your strong and convincing evidence is that the government did prove corrupt intent. Yes, Your Honor. And there, it actually, there's three buckets. And the first bucket, Edgar Sargsyan testified that him and the, and the defendant directly met and spoke and, and created this corrupt agreement. And I know there's a lot of commentary that Edgar Sargsyan was a liar. The government knew that. The government embraced that in its closing and told, and told the jury, even if you believe he's a liar, he's corroborated by independent evidence. And one of those is the defendant's tech queries. And techs is the law enforcement database, and I'll direct Your Honor to excerpt the records 596 through 598. And there, the jury was informed that, and shown that one of the defendant's tech queries, and he queried the street name Albers, and Edgar Sargsyan lived on Albers Street. And there was testimony that if Edgar Sargsyan was under investigation and his address where he lived was associated with that investigation, then the defendant would have pulled up a record and known that Edgar Sargsyan was under investigation. And Edgar Sargsyan testified, that's why I bribed him. I wanted him to protect me. That was the whole point of the bribery. So that's category one. Category two is with regards to WR. WR was a client of Edgar Sargsyan who had immigration problems. And Edgar enlisted the help of the defendant. He paid the defendant, through John Ballion, $30,000. But Edgar Sargsyan, and I'll direct the court to 490 and 523 through 524, Edgar Sargsyan testified that the defendant thanked him in person for the $30,000. But again, there's hard evidence, and I would again point the court to excerpt the record 584 through 586, where the jury saw, again, a text query by the defendant where he queried WR. Again, independent corroboration of what Edgar Sargsyan was testifying about. And lastly, the third bucket with regards to DK, Edgar Sargsyan's brother-in-law. There was, and I'll direct the court to excerpt the record 367 and 1419, direct communications between Edgar Sargsyan and Felix HSI, which was the contact name that Edgar Sargsyan had for the defendant. And there, they discussed Edgar's, quote, inmate relative. And he testified that that was in reference to his brother-in-law, DK. Indeed, and at excerpt 1201, the defendant texts Edgar Sargsyan and says, I checked the system, and I believe he said there was no update. And again, further independent corroboration, I'd point the court to excerpt the record 593 through 596. Again, a text query by the defendant showing that he queried DK. And again, the parole letter lists DK, and as your honors were asking counsel about, the defendant submitted this letter to ASAC-GETCH, and he didn't explain that there was a personal relationship with Edgar Sargsyan, he didn't explain that DK was Edgar Sargsyan's brother-in-law, and he certainly didn't tell his ASAC that he was getting money from Edgar Sargsyan. Whether you want to classify it as a bribe, as the government proved, or even under the defense's theory that there were loans. Was the defense theory that this parole request was coming from the Glendale Police Department? Yes, that was the defense theory. Okay. And was there any, what evidence was there to support that? That defense theory? Yeah. None. Okay. So, for all those reasons, your honor, there was, again, no error. Even if there was, there's no controlling case, there was no plain error, but even if this court were to find that there was plain error, the evidence of defendant's guilt was, to put simply, overwhelming. I understand a lot of that hinged on the testimony of Edgar Sargsyan, which the jury found credible. As defense counsel argued in closing, the case hinged on Edgar Sargsyan, and yet the jury convicted, so they found him credible. And I think part of that analysis of why they found him credible is because there was independent corroborating evidence, the direct communications between the defendant, and I'll just point the court to excerpt of record 849, where the case agent testified that there were thousands of direct communications between the defendant and Edgar Sargsyan. And I would also direct the court to the government's answering brief at page 17, that text message where the defendant says, God is watching over you, and so are the feds. Edgar Sargsyan testified that what he understood that to mean was that Edgar Sargsyan was under his protection. Of course he was. He was bribing the defendant. He was paying his credit card bills and giving him cash. Of course he was going to protect Edgar Sargsyan, and he put that in his own words. So for all of those reasons, your honor, we think that, again, there was no error, even if there was. It certainly isn't plain. What did we do about the sentencing enhancement? Yes, your honor. This court should uphold the sentencing enhancement, and that's because there's a little bit of a background that is important with regards to this current guideline. So this guideline was amended more recently. So there's two versions. Which version was applicable at the time of sentencing here? The version that's before your honor. And in the previous version, it was an eight level enhancement, and the commentary used the phrase supervisory law enforcement officer. And the reason that's relevant here is because when the sentencing commission modified it to the current version that is operative here, it cut in half that enhancement. So it minimized it to four, and it removed from the commentary the word supervisory, such to show that it wanted it to apply to a larger swath of people. It's not just me saying that. It wanted it to apply to a lesser swath of people. I would direct the court to the government's anterior brief at 63 and 64, a Seventh Circuit case in Hill that talks about this juxtaposition, or that juxtaposes the old guideline and the new guideline, and it draws the conclusion at 909, these changes signify an intent to encompass more public officials within the ambit of the enhancement. Okay. But the problem is under Castillo, we need to look at the text of the guideline to determine whether it's ambiguous. Is it your position that it's ambiguous? No, your honor. I believe it isn't ambiguous. And just I think a plain reading is that the defendant was in a sensitive position. And I know counsel argued that high level modifies both decision making as well as sensitive position. To my knowledge, no other court has read it that way. In fact, even the Hill case that I was just discussing holds, and I'll quote it in part, that it only reached the decision that Hill held, quote, a sensitive position. We don't have to reach the question of whether he was also a high level decision maker. It doesn't use the word high level to modify sensitive position because that's the more natural reading. And I know the commentary isn't binding, but if the court goes even to the commentary in terms of the examples given, the examples are broken out into the two parts, into the two buckets, with one of them being a high level decision maker and the other one being a sensitive position. What is a sensitive position? It's a position that's categorized by the type of information that the defendant has access to. So here, the defendant had access to travel records, financial information, travel patterns, criminal histories, such that that information is sensitive, just in the traditional usage of the word sensitive, information that people wouldn't want public. Every government official that has access to this kind of information is a sensitive, holds a sensitive position? Yes, Your Honor. So every member of the FBI, every member of the CIA, every person who works for DHS, all those people are in a sensitive position? Yes, Your Honor. And again, I believe that is why the sentencing commission cut the enhancement in half from eight to four, because that was the intent. It wanted it to apply to a large sloth of people. So to that very point, it did want it to apply to all law enforcement officers, everybody in the FBI, everybody in the CIA, because they... So law clerks for federal courts, anyone that has access to any type of database that's not accessible to the general public is a person in a sensitive position? I think... I mean, I guess defense counsel makes an interesting point that maybe we should look at these words together and think about it in a more restrictive fashion. But I guess it just suggests to me that maybe this is an ambiguous term that's not so easy to decipher. That's a great point, Your Honor. To the extent that there is some ambiguity in that...  To the extent that we're disagreeing about what sensitive means, then of course we would look at the commentary. I think the commentary... I think you would first go to the ordinary meaning of sensitive. Yes. And I think under the ordinary meaning of sensitive, that would be things that people wouldn't want... People wouldn't want to be public, non-public information. I'm not sure that's a dictionary definition. Yeah, I know opposing counsel did put the dictionary definition, and as the government argued in its brief... So a clerk at the Department of Motor Vehicles, that would qualify? I guess it would depend on the type of information. For example, sometimes addresses and phone numbers can be available via open source data. So I think it would affect intensive inquiry in terms of what information is available to the individual. But here on the record, we have, based on the information that defendant had access to, and not only had access to, that he affirmatively used in this bribery scheme, we think the enhancement's appropriate. You just think we should go ahead and decide this issue and not send it back to the district I think your honors have sufficient information before the record to uphold the sentencing enhancement, correct? Okay. Okay. Thank you, counsel. Thank you. A few quick points. Just in terms of the government seeming to fall back and try to rely on the commentary, they did waive that in note 16 of their brief. I think their point about the change in 2004 just goes to show how arbitrary the commentary is, because in 2004, the same language, high level decision making or sensitive position was interpreted to mean supervisory law enforcement, and then they just changed the commentary with no real comment, no explanation why the words themselves would mean something different. And the government's argument I think is very strange as well to argue that a DMV clerk and Bob Menendez should have the same enhancements under the guidelines, kind of makes a joke of the idea that you should have higher sentences for more serious crimes. Going back to the first issue, I'd just note that a lot of the government's arguments about their strong and convincing evidence, again, rely on the words of Mr. Sargsyan, who is just a terrible liar, and the fact that they embrace that for the jury doesn't mean much where the jury was wrongly instructed. So that the jury let it go when there was a bad instruction in front of them doesn't tell us what a jury that was properly instructed would have done. What about, in closing arguments, defense counsel's repetition that the government bears the burden of beyond a reasonable doubt, and the court, of course, made that instruction as well for all the elements of the offense. Does that assuage concerns of prejudice with how much emphasis was placed on that? I don't think so because, you know, as I read the defense closing, I don't see him focusing on corruptly much at all, and I don't think that he, instead of arguing corruptly beyond a reasonable doubt, he's arguing this public authority defense, you know, where he bears the burden and he's taking the burden. Let me ask you this, assume for purposes of this question, we agree with you, and decide to reverse, send it back. So how should the district court handle this issue at a new trial? So I think at a new trial, we'd see if the defense attorney requested such an instruction. If they requested it, you'd hope that they would request it without taking on the burden, and then it would be up to the district court whether the instruction, you know, I mean Well, he'd have to give it if that was their defense, right? Sorry? If public authority was a defense, he would have to give it. So how does he avoid, how does the district court avoid this situation? By giving a version of the instruction that doesn't take on the burden. I mean, I can suggest wording for you if you want, but you just, it's, there's, you know, you could get, hit the same principle. You could say the defendant contends he believed his actions were taken at the request of a government agent for government purposes. In order to prove that he acted corruptly as required by counts one and two of the indictment, the government must show that the defendant did not reasonably believe he was acting as an authorized government agent to assist in law enforcement activities. Okay. And I'm totally in the red, but I'll just point out really quickly that the government, when asked repeatedly, still couldn't point to any way that the instruction didn't negate corruptly. Thank you. Thank you very much, counsel. U.S. v. Cisneros will be submitted, and we'll take up U.S. v. Shenzhen New World.
judges: WARDLAW, PAEZ, SANCHEZ